Thank you, Your Honor. I'm Michael Malikoff. I represent the homeowner putative class in this case where the name plaintiff is Ms. Glover. I'm accompanied today at the I believe the first order of this court is not merit related but subject matter jurisdiction. Yes, I do. Thank you. Five minutes. As the court knows on June 12th it entered a rather extensive opinion in the case called Elliott and we were to be prepared to address that subject matter jurisdiction at the outset of argument today. I'm holding in my right hand the Rule 54B certificate that was entered by Judge Ambrose of the District Court and I'm holding in my left hand the Elliott Rule 54B certificate that this court found was defective under Rule 54B. I believe that there are three significant differences between the two orders which should lead this court to conclude that the Rule 54B order before this court that we are here on today satisfies the prerequisites of Rule 54B. The least important of the three factors I believe that differentiate the three Rule 54Bs is that at a bare minimum, without meeting any disrespect, I believe that the Elliott procedural history was somewhat muddled. Initially, counsel had asked for Rule 54B certification. It was denied. Counsel then asked for a 1292B certification. And finally, full circle, they then asked again for a Rule 54B certification. But more to the point and directly to the prerequisites of Rule 54B, the court has to look at whether there are clear and reasonable reasons for delay. In this case, those exact words are found. In other words, you did set forth the standard, so the court made the standard. I respectfully disagree with Your Honor because immediately after the sentence where she set forth the standard, after saying and I'll quote, there's no just reason for delay, the very, very next sentence in that's the standard. But the very next sentence is pursuant to Rule 54B of the Federal Rules of Civil Procedure, this court has considered the questions relevant to a Rule 54B appeal. I'm not talking about intent because under Rule 54 there has to be an explicit finding. What I'm talking about is immediately the sentence. First of all, Elliott did not have words or equivalent words like there is no just reason for delay. And what I'm saying is, is not only did this opinion have those exact words, but immediately the very next sentence, the court said after referencing that, and I quote, there it is, the order is final and ready for appeal with reference to that standard, no just reason for delay. But let me go on to make a second point that I believe differentiates the two cases. In Elliott, at the end of this court's opinion, it referred to the five standards of the Ellis Chimers case and the court said it would be virtually conclusive if a district judge went through those five standards for the court to find that Rule 54B was not satisfied. In this particular order, the court cites the Ellis standards and then by bullet point 1, 2, 3, 4, 5, addresses each and every one of those standards. So according to Elliott, it would be almost conclusive that those standards were not satisfied. I'd like to ask how to turn Mr. Barton. Did you disagree with Mr. Malkoff on this jurisdiction? No, your honor. My view of this, and obviously we didn't have the benefit of this opinion at that time, was that submitting an order which was agreed to by counsel and it was discussed with Magistrate Mitchell, who then obviously passed it on to Judge Ambrose. I cannot tell, unfortunately I can't tell for sure from the opinion whether a separate statement of reasons from the judge is required. I've read the decision about five times. Do you not disagree with Mr. Malkoff on the jurisdictional question? No. Having said that, one thing I might suggest, if counsel could agree with this, notwithstanding whatever we might decide, would you be willing to go back to the district court, in your argument in this case, would you be willing to go back to the district court to have the district court supplement the order? Absolutely, your honor, and in fact... In some cases where we bail the matter today and still it comes back from the district court, and then we receive... Absolutely, and I might add that we noted that this court suggested that counsel and Elliot should have done just that, and simply because of the timing, we weren't able to do it. While we do this, I'm going to add eight minutes back on the argument. Thank you. Let's dispense with further discussion on the jurisdictional issue, and we would ask you to go back to get the order corrected. There have been other cases where this court has done that, and in the meantime, we'll hear the arguments on the merits of the case, as we normally would, pending the receipt of the correct order. Pardon me, I never thought we'd have this discussion, because I figured that's exactly what you would do, as soon as you got our notice. Then I deeply apologize, your honor. We didn't ask you to go, that's not what we think. Again, I thought in light of the timing, you know, June 12th, the opinion, June 13th, we were notified. You don't have to explain yourself, but this is perceived. Thank you. You should have ten minutes on that. And I again apologize for not doing that. These things happen. I think today we have an exceptionally exciting number of issues that impact Pennsylvania residents. We have a number of questions certified under two state statutes, which are consumer statutes, which have widespread ramifications to both the lending industry and homeowners and other consumers in this state. The legislature obviously balances the rights between consumers and lenders, and this court is being called upon to determine where that balance was drawn by the Pennsylvania legislature. The two acts in question are the Fair Credit Extension Uniformity Act, which is somewhat but not completely modeled after the Federal Fair Debt Collection Practice Act, which is also before this court. And of course, this court's opinion interpreting that act will presumably have nationwide application, as well as the State Loan Interest Protection Act, which I'll sometimes refer to as Act 6. I believe that the easiest issue to handle, the one I would like to handle first, is whether there was a cause of action stated under the Federal Fair Debt Collection Practice Act. The court held that it was not timely, based on counting up a series of stays under FIORA, and I mention that act because in this case the lender failed, was taken over by the OTC, the FDIC was appointed the receiver, and the FDIC then filed notice with the court. It's our position that at the time the FDIC notifies the court to the end of the administrative process that all actions are stayed. There's not even a need for a second notification. That was the holding of the magistrate. On the second stay we filed objections arguing that the second stay should not apply to anyone other than the FDIC, which it substituted for WAMU, but in a somewhat succinct scholarly opinion, I disagree with, but nonetheless it's the court held that as to third parties it should be stayed. Can you start off by saying why there's a cause of action? You're drifting into the confinement of some of the... Okay. We believe there's a cause of action under the Fair Debt Collection Practice Act quite simply because the time to start the claim is not when the complaint was filed in April of 2006. The time to start the claims that we have asserted here are January 4th of 2008. Why do I say January 4th of 2008? I say that because that is the date that the service or Wells Fargo entered into a loan modification agreement as the lender. In other words, it was on that date Mrs. Glover paid off all or 90% plus of the foreclosure debt. It turns out after the next couple months it was determined that... Aren't you better off with that if the clock starts running and the next claim is released in March and the case is the death from a notice of a modification agreement? Yes, and if this court made that single holding which is evidenced in the foreclosure history maintained by Debt Collecting Council, that would pick up the five days that the lower court held that we were short. But you started out arguing in January. I was going chronological, Your Honor, but I'm happy to begin in March. I'm just saying, what's your argument? My argument is that in March a number of very significant... In March the debt collector went outside the bona fide air defense because they were notified by Wells Fargo that this debt had been paid or substantially paid. And so that was the first opportunity where there would have been a violation. Was the March data before the trial court, the data regarding March? Yes. Not at that particular date, but if you looked at our brief, we argued in our brief that the violation could not start on January 4th of 2008 because the debt collector had changed and that there would have been some unknown period before the debt collector would have notified the debt collecting law firm. And we said we didn't know that. But as a result of discovery that we have obtained, it's in the record. It was entered post-judgment, but it's in the record. That's what I was asking. Post-judgment, I'm just trying to clarify whether that information was not before Mr. Judge you were giving us information that was not there. I believe that's partially accurate. I say it's partially accurate because we affirmatively stated in our papers that January 4th would not be the day that the violation occurred. It would be the date that the debt collector was notified that the debt had been paid. And we said with discovery, we will be able to ascertain that. And we said that if the court were to make inferences as required in our favor, the court should accept that. Thereafter, we learned the exact date, and that exact date was March 4th. But the court at all times... We were under a situation where with all due respect to the magistrate court, inferences were drawn against us. And that is one particular inference that was drawn against us. But in any event, the operative date, it's undisputed, the records come from the debt collector, is March 4th. And therefore, if we filed our complaint, as we did in state court on January 8th, we're well within the one-year statute of limitations. And again, I note we're only five days short. And therefore, we have a timely claim. It's our position, if the court does not accept that argument, that the statute was stayed throughout the entire Fiora's administrative stay process. We say that primarily because we battled for over a year against the FDIC on the scope of the stay and on the meaning of the statute, which has divided the courts of appeals, and we lost. And so our position with the stay and the tolling under Fiora was simply look at the FDIC's papers. Those are the arguments that the court adopted, and those are the arguments that we request the court adopt today. Thank you. There are five violations, Your Honor, and they're basically the same under the state act as well as the federal act. The five violations, as set forth in our complaint, all arise under 1692E if one were to refer to the federal statute, which is incorporated in the state statute. And I'm looking... I had a list of them. I'll have to use... I know what you refer to, but what cases are out there that says that the following of the complaint of mortgage foreclosure, which was done in this case in 2006, which was accurate in Kapan, becomes a violation by virtue of the fact that a modification, one modification was made to the statute? We believe one of our strongest cases would be the recent Ninth Circuit case of McDonoghue, which we cite in our brief. What we are saying is this. One has to look at... Let's take one of the FDCPA violations, which is the legal status of the debt or not claiming a debt that's not authorized by the papers. And I might add that with respect to real property, there's a particular provision where even an implication, not only a misrepresentation, is sufficient. Okay. What exactly happened... Okay. What exactly happened on March 4th? An accelerated debt became unaccelerated. You know, you can't foreclose on an unaccelerated debt. The lender had changed. And $12,100 or $12,600 was paid. I mean, either one of those would have to result in an adjustment of the debt. And this debt was on the public record. And here we had a homeowner who completely paid the debt, and yet the record, the public record, indicated she had not. And the fact that they were telling her, they being the Debt Collectors' Council, that she still owed the debt, when in their files, as of March, they knew she did not. She didn't request a preliminary complaint from the public? She didn't request a dismissal? It hadn't gotten that far yet, Your Honor. She had filed preliminary objections. The preliminary objections in the foreclosure case were stayed. And thereafter, they remained stayed even long, almost a year after she had filed to have the case removed, filed in federal court, to have the state foreclosure case removed. I don't know. I wouldn't measure it that way. I would look at the bona fide error standards and ask if they had reasonable procedures in place to deal with this situation. And if they had reasonable procedures in place, and it could be a month that they have under their reasonable procedures, then they would have had a complete defense. If they had no reasonable procedures in place, then maybe a week would be too long. It would be a fact-intense inquiry. Thank you. Yes. The question I have is, is there any other issue before us other than statutory limitations as it relates to the 12B6 motion? I know there was a prior order dismissing the case without prejudice, and that related directly to the Fair Debt Collection Practices Act and various stated claims pursuant to the end of that act. Why he amended the complaint, I understand your argument and your briefs is that he amended the complaint, but still there is no claim. New sections were added to the Fair Debt Collection Practices Act. Not as to Udrin, Your Honor. I recite in my brief the changes that were done and they were purely stylistic. There were no additional facts pleaded in the second amended complaint as to Udrin on the FDCPA claim. The argument is that we have that issue in front of us as well as the statutory limitation issue. That's correct and of course the Court of Appeals may affirm on any basis irrespective of what the District Court did if there is an independent basis to affirm which is law that I cited to as well. But the initial complaint was dismissed with leave to amend. He made no significant changes and this time it's a complicated procedural setting because there were other parties. The statute of limitations defense in terms of what was said by the lender defendants who were still back in District Court. All we said is the only act complained of is the filing of the complaint. There was no other act, affirmative act alleged. Udrin had no duty to Glover to remove a complaint and the attempt to supplement the record post judgment by referring and misleadingly referring to an item that was contained in the log of the law firm which just says there's a modification agreement. Modification agreements frequently provide that a judgment or a case will remain until there's performance under the modification. The second dismissal I don't mean the knock-blast the second dismissal the dismissal after the amendment of the complaint referred only to the statute of limitations is that right? That's correct. And they did not do it at all with other arguments? That's correct. However I believe the first opinion the intention was that it still doesn't state a cause of action but we'll also phrase it in this view. He did not the judge did not hold that the amendments changed the first decision. The amendments as I pointed out in the brief are purely stylistic. He did not rule on it but one would think that he would allege he would have held one way or the other if he was going to change his mind as to he would have said well now they've stated a claim but we'll move on to the  of limitations. Right of course. In April 2006 when the foreclosure complaint was filed there was no other action taken by UDRA. The way this went down is that there was a foreclosure complaint filed counsel was retained by Glover who filed preliminary objections on the basis of improper verification. Counsel for both parties agreed to put the matter in abeyance while they tried to work out a modification agreement and no other action ever was taken on the case. It just sat there. A couple of years later there was a modification by a subsequent lender not even UDRA's client because WAMU had become insolvent the loans were purchased by Wells Fargo and they entered into a modification agreement the terms of which were unknown to UDRA. So the only time when there was a request made to remove the to withdraw the complaint was made by Mr. Malikoff to me in 2009 and I spoke to everybody and had the complaint withdrawn. But there was never any demand in fact the complaint was withdrawn shortly after the amended complaint but the mortgage court complaint was satisfied people using the word withdrawn that's true and there's of course a provision well when mortgages are satisfied it requires a formal demand. The question here is what duty is there on UDRA directly to Glover to withdraw a complaint? If it were a violation of the modification agreement between Wells Fargo and Glover to withdraw the complaint for the complaint not to be withdrawn that's a claim she has against her contractual party. UDRA had represents a client not Glover it doesn't My point is it was after about a week after the filing of the amended complaint. When we yes that's when we had that discussion that's correct and that's the first time it was alleged as a basis. Remember this was a moving target originally it was based on the complaint which clearly was time barred and after I filed a motion to dismiss they came up with a new theory. So your argument really is two parts one you say the complaint was approved in April of 2006 correct that's correct and two your argument is that the existence of that complaint mortgage was on the record for whatever period of time up until the time it was satisfied that's correct and I cite to three cases in my brief which are not even addressed or mentioned which are the Myers versus Sessons case out of the Eastern District of North Carolina Humphrey versus Brown the District of Maryland and Maynard versus Cannon in Utah all of which hold that inaction is not the basis for an FDCPA claim the one case that they respond with the McCullough claim is not an inaction case in that case there was a summary judgment motion filed it wasn't a summary judgment motion it was a case in which the debt collector attorney representing a wholesale purchaser of debts for which they had no documentation filed a summary judgment motion that was both time barred and that they could not prevail on because they didn't have the documentation that's a very different situation than what we have here your honor and there is not a single case that I've uncovered nor cited by Mr. Malikoff that holds that inaction or the failure to do something the Utah case is instructive because there was a recorded notice of default which is required under Utah law for a foreclosure and there was a they allege that that constituted a continuing communication the court rejected that holding that the FDC FDCPA does not require an act to be undone and that's really what we have here whether the FDCPA requires a foreclosure action which is filed and there's no other anything that can be classified as debt collection activity to be withdrawn it's a novel it's inventive but there's no basis in the law for it and accordingly the FDCPA claim simply doesn't state a claim because all Udrin did was file an action and remember Glover was represented by counsel the entire time she never different counsel than Mr. Malikoff in the foreclosure she never made a demand nor did she file a motion saying that now it's it's been taken care of there's a modification somehow the duty is being placed on the lender's law firm and there is no such duty from the law firm if there is a claim it would be against her lender alright this is a strict liability statute correct and the existence of that complaint where you can put it on the record let's suppose that uh Ms. Glover uh went to buy a new car finance that car they did a credit check wouldn't wouldn't the existence of this complaint that would be a still show up well if there's reported that would be a different statute of course that wouldn't be the FDCPA uh that would be the fair credit reporting act your honor and and that's not a claim in this case it isn't a claim it isn't the fact that it would confuse a prospective business person with whom she was dealing it it may in fact constitute a misrepresentation of the fair credit action except the lawyer is not a reporter you see that's it's a completely different statutory framework your honor the reporter of credit information is not the law firm that would be the uh the bank the lender and any claim I understand that but I'm going back to the existence of the complaint mortgage disclosure on the record and that's not the basis of Ms. Glover's claim in this case well it has to be a communication or an act in furtherance of debt collection activity and and and it isn't it's placing a complaint on the record that the mortgage company is now in account the complaint already was there your honor it is there but there is no again the duty if any would have come from the lender not the law firm the action was not predicated on the initial placing of the claim well it was originally it was after a motion to dismiss was filed it was amended to say the continuing communication and and Judge Mitchell held that it is not a communication but I mean when the first complaint was filed was it uh is the action based on the file of the original mortgage complaint the original complaint was yes it was based on the request for attorney's fees in the original complaint that was the  of course and Ms. Glover was represented by counsel in that action and no such motion was made that's that's part of what I've been arguing that she's represented she has counsel if there's a remedy for failure to discontinue a complaint the remedy is against either her own counsel who did nothing about it or the lender but not the lender's it's an unusual situation because Udren represented the prior lender not Wells Fargo there was you know there was a replacement lender and that may have been part of the reason that it was a little bit muddled but still it was well within Ms. Glover's ability to have that case discontinued through counsel if all she had to do was file a motion I'm sure if she had just asked it would have been done well I think in part that was already resolved by Judge Weddick's opinion which I furnished to the court the other day in the state law claims and by the way there's no LIPA claim Act 6 in this action that was discontinued and filed in state court and Judge Weddick dismissed it in that dismissal he said any claim based on the Fair Credit Uniformity Act would be barred because of the fact that there's an exception for lawyers filing pleadings which doesn't exist in the FDCPA but does exist in the FCEUA so I would argue that they are collaterally stopped at this point their remedy would be an appeal from that but moreover it's a purchase money mortgage that was the basis for the judges decision in the district court on the house which takes precedence over prior judgment against you and that's what this is this was a purchase the original loan did she use this loan to buy the property it is undisputed that that's the case your honor yes she used it to buy the property what Mr. Malikoff has argued is that the accepted definition of purchase money mortgage which is as you said to purchase the property should be applied only to seller financing I don't believe he cited any case which limited the purchase money mortgage to seller financing he went into deep history of the derivation of purchase money mortgage but it's defined under the case law and in blacks law dictionary it is the accepted definition as I stated I haven't seen any case law that raises that precise issue whether it's limited to seller financing but it's it's it states on the mortgage itself that it's a purchase money mortgage it's not denied that it was a purchase money mortgage in terms of it being used for the purchase of the property Mr. Malikoff once again is coming up with a creative argument but there's no support in the law to distinguish between seller financing and bank financing for a purchase money mortgage let me add finally on that regard since once again since the last act was the filing of the complaint even if it's two years it's time barred they filed two and a half years after the filing of the complaint so you'd have to similarly accept the notion that not only are even though lawyers are exempted for filing pleadings and the only argument here is that they filed a pleading and then didn't withdraw it to that it's a purchase money mortgage is something other than what it says and finally let me just make since I have seven seconds left I think that the court if they get to this issue should take a look at whether mortgage foreclosures with nothing more no letters no debt collection activity in addition to it are exempt from the FDCPA because of the definition in 1692F I thought that the exclusion of the lawyers from the state act and not the federal act shouldn't the lawyers have more choice I don't think there's any doubt about that but where do I have to go with that file well that's been decided in the state court action thank you very much your honor um Mr. Malakoff uh there's a generous on the front end so it might want to be sustained thank you your honor if there's a common nucleus of fact then it it relates back under rule 15 here there was much more than a simple common nucleus of fact but a common nucleus of the law because if you looked at my state complaint of June 8th in fact it's citing the federal FDCPA they're virtually identical yes yes and that's that seems to be the position that the defendant has moved to in its reply brief that's correct but yes but you don't have to under rule 8 you don't have to plead     same but in fact uh that's I don't have to plead any legal theory the facts were the same but in fact I   plead any legal theory I believe we've cited third circuit cases saying something different well I know this court's history I'm a little frightened to say any more I'll certainly check our citations your honor on the purchase money mortgages I'd like to just quickly go through it there was a woman's exception act that's when the phrase first arose it's notes of state and a series of cases going over the next hundred years in terms of common understanding this mortgage was entered into by city bank city bank clearly would have known that the American bankers association definition of purchase money mortgage is the same as ours city bank would have also known that the ABA section on banking has a dictionary on terminology same definition as ours what's very interesting is that the FCEUA has a direct history in the attorney general guidelines which were basically incorporated into the FCEUA and in that we have provided the court the Pennsylvania bulletins which showed the changes that went through the publication process where sometimes they used residential mortgage sometimes they used purchase money mortgage different words mean different things and how the end result was with the purchase money mortgage which is narrower under Pennsylvania case law and under all industry dictionaries than what is now being argued today. I would like to make one more legal point and one factual point. The loan modification agreement was signed on June 4, 2008. The debt collector council had notice of that in March of 2008. Our very first complaint asked them to remove that foreclosure action. Before we became involved, they were being negotiated by neighborhood legal services and their discussions are not in the record, but it is incorrect to say that we made the first demand and the loan   was signed in March of 2008. It is not an uncommon experience because the lenders are concerned that loan modification agreements, even when they are completely paid, are not going to get credit. They are severely penalized by the fact that they can't get credit because it is as if they owe tens of thousands of dollars on an accelerated mortgage when in fact that mortgage has been unaccelerated and they no longer owe the lender  thousands of dollars. So it is a very serious problem and the question is how did the legislature intend to deal with this problem? Thank you, Your Honor. We thank both counsel for their arguments. Thank you, Your Honor.